10-1410-cv
Redd v. New York State Division of Parole

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2011

(Argued:  November 15, 2011                    Decided:  May 4, 2012)

Docket No. 10-1410-cv

_____

FEDIE R. REDD,

                                        Plaintiff-Appellant,

                    - v. -

NEW YORK STATE DIVISION OF PAROLE,

                                        Defendant-Appellee.

_____

Before:  KEARSE, WALKER, and RAGGI, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York, Nicholas G. Garaufis, Judge, granting summary judgment dismissing, inter alia, hostile work environment claim under Title VII, 42 U.S.C. § 2000e et seq., alleging female supervisor's repeated touching of female plaintiff's breasts.  See 2010 WL 1177453 (2010).

Vacated in part and remanded.

MAIA GOODELL, New York, New York (Vladeck, Waldman, Elias & Engelhard, New York, New York, on the brief), for Plaintiff-Appellant.

LAURA R. JOHNSON, Assistant Solicitor General, New York, New York (Eric T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Benjamin N. Gutman, Deputy Solicitor General, New York, New York, on the brief), for Defendant-Appellee.

KEARSE, Circuit Judge:

Plaintiff Fedie R. Redd appeals from a judgment of the United States District Court for the Eastern District of New York, Nicholas G. Garaufis, Judge, dismissing her complaint alleging disparate treatment on the basis of race and gender, retaliation, and sexual harassment by her employer, defendant New York State ("State") Division of Parole ("Division" or "Parole Division"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The district court granted the Division's motion for summary judgment dismissing the complaint, ruling, as to the sexual harassment claim, that the alleged touchings of Redd's breasts by a female Division supervisor were minor and incidental, were episodic, may have been accidental, and did not occur because of Redd's sex. On appeal, Redd contends that the supervisor's touchings were sufficiently abusive to support her hostile work environment claim and that summary judgment was inappropriate because there were genuine issues of fact to be tried. We agree that summary judgment dismissing the hostile work environment claim was inappropriate, and we vacate so much of the judgment as dismissed that claim and remand for further proceedings.

## I. BACKGROUND

Redd, who represented herself throughout the proceedings in the district court, has been employed as a parole officer (or "PO") by the Division since April 1990. She complained on a number of occasions that she, inter alia, was denied transfers to offices closer to home, where she resided with her three young daughters; was subjected to racially discriminatory treatment and discipline; was subjected to retaliation for making complaints; and was subjected to sexual harassment. After receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), she commenced the present action to pursue those complaints. On this appeal, however, she pursues only her claim of a hostile work environment due to sexual harassment by a Division supervisor. To the extent pertinent to that claim, the record, taken in the light most favorable to Redd as the party against whom summary judgment was granted, includes the following.

### A. Redd's Complaints of Sexual Harassment

In 2005, Redd worked in a Parole Division office in Queens, New York (the "Queens I Office"); her immediate supervisor was Senior Parole Officer Clifford Crawford. Beginning in February 2005, Area Supervisor Sarah Washington was transferred into the Queens I Office and headed that office. The principal focus of Redd's sexual harassment claim is that on three occasions between mid-April and mid-September 2005, Washington made sexual advances to her, touching Redd's breasts.

In her verified pro se administrative complaint filed with the State's Division of Human Rights, Redd alleged that

3

> [o]n April 19, 2005, June 16, 2005, and September 15, 2005, Ms. Washington
> . . . sexually harassed me by brushing up against my breast while I was sitting
> at the computer, and she rubbed my hand. Ms. Washington never apologized
> to me for touching me, and I backed away from her to refuse her advances.

(Verified Administrative Complaint ¶ 7.) In her pro se complaint in the present action ("Complaint"), to which she attached a copy of her verified administrative complaint, Redd alleged that she "ha[d] been subjected to homosexual advances" (Complaint ¶ 8). Redd described the three 2005 incidents in her deposition. She testified that on April 19, she was in Washington's office reviewing a transfer list, when Washington "brushed up against [Redd's] breasts." (Deposition of Fedie R. Redd ("Redd Dep.") at 142.) Redd testified that she was so "totally thrown off" by this that she spilled water all over the transfer list. (Id.) Redd testified that the second incident occurred on June 16, when she and another parole officer were talking in a hallway. Washington "came up and she touched my breasts and rubbed up against it again in front of this parole officer." (Id.)

Redd testified that, as a result of these incidents, in which Washington "had brushed against my breast and felt my breasts," she was uncomfortable around Washington. (Redd Dep. 141.) Washington was not Redd's immediate supervisor, but she repeatedly called Redd into her office. (See, e.g., id. at 145.) Redd complained to her own supervisor and attempted to avoid going into Washington's office; but as Washington was in charge of the entire Queens I Office, Redd had no alternative but to go to Washington's office when summoned. When asked whether she had complained to Washington about the touching, Redd testified,

> I avoided Ms. Washington at all costs and she knew I was avoiding her but she
> continued to call me into her office. I talked to my supervisor about it. She
> just continued to call me into her office and she was the area supervisor and
> what she said went . . . .

(Id.)

4

Redd testified that on September 15, Washington "rubbed up against my breasts again." (Redd Dep. 142.) Redd, at the time, was sitting at a computer in a secretarial area attempting to input information using a new procedure. Washington, without Redd's having asked for her help, went over to Redd, "reached over and touched and brushed up against [Redd's] breast." (Id. at 143.)

Washington, in her deposition taken by Redd, testified in pertinent part as follows:

Q. Were you present at the [Queens I Office] work location . . . on 4/19/05, 6/16/05 and 9/15/05?

A. I believe so.

Q. On those days, did you have physical contact with me?

A. I don't understand what you mean by physical contact.

Q. Did you touch me in any inappropriate manner?

A. What does inappropriate manner mean?

Q. Put your hands on me?

A. No.

(Deposition of Sarah [E.] Washington ("Washington Dep.") at 6.)

Redd testified in her deposition that she had complained about Washington's sexual touchings to Jose Burgos, the Parole Division's Director of Human Resources, but that no action was taken. (See Redd Dep. 144-45.) Burgos, when his deposition was taken by Redd, testified that he did not recall that Redd had ever filed a complaint about Washington "directly" with the Division. (Deposition of Jose A. Burgos ("Burgos Dep.") at 51); however, he appeared to recall that Redd had in fact complained to him that she had been sexually harassed by Washington. In testifying about a disciplinary suspension of Redd on September 16, 2005, and her reinstatement in 2006 as ordered by an arbitrator, Burgos stated that the decision as to whether Redd would be allowed to return to work

absent a ruling by the arbitrator was a decision in which there would have been input from Washington. Redd asked:

> Q. Even if she was sexually harassing me?

> A. I have no <u>evidence</u> that she was sexually harassing you.

> Q. Didn't I put in the complaint, did I not complain about her sexually harassing me?

> A. <u>My recollection is that you complained that Ms. Washington bumped you and that you viewed that as--bumped you as she passed you, and you viewed that as sexual harassment</u>.

> Q. <u>I didn't put in the complaint that she bumped me. I put in the complaint that she felt my breast on three different occasions</u>. Did you investigate that?

> A. I don't have a recollection of you filing that complaint <u>directly</u> with the Division of Parole.

(<u>Id</u>. at 50-51 (emphases added).)

Parole Division Regional Director James Dress acknowledged that it would be "inappropriate" for a supervisor to "sexually harass[ an employee] by feeling their breast three times." (Deposition of James Dress at 49.)


B. <u>The Parole Division's Motion for Summary Judgment</u>

The Parole Division moved for summary judgment dismissing Redd's complaint and submitted, <u>inter alia</u>, affirmations by Washington and Burgos. Washington's affirmation, given "to supplement [her] deposition taken by the <u>pro se</u> plaintiff Fedie R. Redd," stated:

> As I testified in my deposition, on April 19, June 16, and September 15, 2005, I believe I was on duty at the Queens I . . . Office, and I did not touch PO Redd <u>in any inappropriate manner</u>. Nor did I sexually harass or make any other <u>inappropriate</u> physical contact with PO Redd on any other date.

6

(Undated Affirmation of Sarah E. Washington ("Washington Aff.") ¶¶ 1, 6 (emphases added).) Burgos's affirmation "to supplement [his] deposition taken by the pro se plaintiff Fedie R. Redd," stated:

> As I testified in my deposition, I did not recall ever having received any written sexual harassment complaint by PO Redd against Area Supervisor Washington. In addition, at the time of PO Redd's 2005 suspension, I was not aware of having previously received any written sexual harassment complaints from PO Redd against Washington . . . .

(Affirmation of Jose A. Burgos dated March 22, 2009 ("Burgos Aff."), ¶¶ 1, 9 (emphases added).)

The Division, in its statement pursuant to Local Rule 56.1 ("Rule 56.1 Statement") as to the facts that it contended were undisputed, cited, inter alia, Washington's denial that on April 19, June 16, and September 15, 2005, she had "touch[ed] plaintiff in any inappropriate manner." (Division's Rule 56.1 Statement ¶ 32).) The Division also stated that despite Redd's claim that there was a witness to Washington's alleged touching in the hallway, Redd had "failed to proffer the witness's name or affidavit because that witness allegedly feared retaliation." (Id.) Redd, in a Rule 56.1 Statement of facts as to which she contended there were genuine issues to be tried, disputed, inter alia, the Division's assertion that she had failed to identify the witness to Washington's hallway touching of Redd's breasts. (See Redd's Rule 56.1 Statement ¶ 32.) Redd gave the witness's name (see id.), stated that she had previously given it in a confidential list of witnesses (see id.), and submitted a sworn declaration annexing, inter alia, a copy of the document--which was part of the administrative record--in which she had included the witness's name (see Declaration of Fedie R. Redd dated May 19, 2009, Exhibit T).

C.  The Decision of the District Court

The motion for summary judgment was referred to Magistrate Judge Lois Bloom for report and recommendation.  The magistrate judge, while recommending that most of Redd's claims be dismissed, recommended that summary judgment be denied as to the claim of sexual harassment by reason of Washington's alleged physical contacts.  The magistrate judge concluded that

> a reasonable jury could conclude that Washington's alleged conduct was sufficiently severe and pervasive to create a hostile work environment. Plaintiff alleges that Washington, her supervisor, touched her breasts on three separate occasions over a five-month period. . . .  Plaintiff states that these incidents made her feel "uncomfortable" to the point where she "avoided Ms. Washington at all costs," but that Washington continued to call her into her office. . . .  Plaintiff also states that she was reluctant to complain about Washington's actions for fear of being labeled as someone who cannot work with others. . . .
>
> Although Washington denies ever touching plaintiff in any inappropriate manner, . . . the Court must consider the record in the light most favorable to the plaintiff. . . .  Plaintiff has testified that Washington, her supervisor, touched her breasts on three occasions over a five-month period, and that this conduct altered the conditions of her employment. Plaintiff raises a genuine issue of material fact regarding her hostile work environment claim against Washington. Therefore, defendant's motion for summary judgment on this claim should be denied.

(Magistrate Judge's Report & Recommendation dated March 2, 2010, at 25.)

The Division objected to this aspect of the magistrate judge's recommendation, arguing that

> three isolated brushes or touches by Washington of plaintiff's chest over a five-month period were neither sufficiently severe nor pervasive enough to alter the conditions of employment, and plaintiff failed to show evidence that a specific basis exists for imputing the objectionable conduct to the employer to make out her prima facie Title VII hostile work environment claim.

(Parole Division's Objection to the Magistrate Judge's Report and Recommendation at 3; see also id. at 4-14.)  It argued, inter alia, that Redd had failed to show that the harassment occurred because of

8

her gender (see id. at 12-14); that she had not shown that the incidents were physically threatening or humiliating, or unreasonably interfered with her work, or had caused her any psychological harm (see, e.g., id. at 9-11); and that although Redd "claim[ed] to have felt 'uncomfortable,'" she had not "tried to avoid Washington by transferring from the office" (id. at 10).

In a Memorandum & Order dated March 24, 2010, reported at 2010 WL 1177453, the district judge upheld the Parole Division's objection to the magistrate judge's recommendation that summary judgment be denied as to Redd's hostile work environment claim of physical touching. The court began by noting that a "reasonable jury could find that Redd subjectively perceived her environment to be hostile or abusive." 2010 WL 1177453, at *3. However, the court concluded that

> Redd has failed . . . to offer evidence demonstrating that the complained-of conduct was objectively hostile and abusive enough to constitute an "intolerable alteration" of her working conditions sufficient to substantially interfere with her ability to perform her job.

Id. (emphasis in original). The court stated that

> Washington's alleged acts consisted of relatively minor, incidental physical contact. Even drawing all inferences in Redd's favor, the contact may have been purely accidental. There is no basis for concluding that Washington's conduct was physically threatening or humiliating. Moreover, the alleged incidents were episodic, rather than continuous or concerted.

Id. (emphases added). Stating that "[s]everal courts have concluded that similar allegations fall below the threshold of severity for a hostile work environment claim," id. (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998), and Lewis v. North General Hospital, 502 F.Supp.2d 390, 403 (S.D.N.Y. 2007)), the district court ruled that "no reasonable jury could find Washington's conduct to be so severe or pervasive as to be objectively hostile or abusive," 2010 WL 1177453, at *3.

9

The district court also concluded that Redd had not proffered sufficient evidence to permit an inference that Washington had touched Redd's breasts because Redd was a woman:

> Even if Redd could establish that she was subjected to an objectively hostile or abusive work environment, however, summary judgment for Defendant would be appropriate because Redd has failed to offer evidence that the relevant conduct occurred because of her membership in a protected class. . . . Abusive conduct in the workplace for reasons other than a plaintiff's membership in a protected class is not actionable under Title VII. . . . Here, no reasonable jury could conclude that Washington's alleged conduct was directed at Redd because of her gender.
>
> The Supreme Court has explained that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Where a plaintiff alleges same-sex sexual harassment, however, it may not be appropriate to infer that similar conduct would not have been directed at an individual of another sex. See id. The Oncale court described three possible ways, however, in which a plaintiff may prove that same-sex harassment occurred "because of sex." A plaintiff can (1) provide "credible evidence that the harasser was homosexual;" (2) demonstrate that the harasser was "motivated by general hostility to the presence of women in the workplace," or (3) "offer direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace." Id.
>
> Redd has not offered any credible evidence that Washington's actions were based on her sex. She has not provided any evidence that Washington is a homosexual or was acting based on sexual desire. Likewise, there is no evidence that Washington was motivated by a general hostility toward women or treated men and women differently in a significant way. Redd does not attribute any suggestive or sexual remarks to Washington, nor allege that she directed similar conduct toward others. As such, a jury would have to speculate as to Washington's underlying motivation--if any--for brushing up against Redd. A reasonable jury could not find that, more likely than not, Washington brushed up against Redd because she was female. . . . Accordingly, there is no genuine issue of material fact regarding the requirement that Redd prove that she was discriminated against because of her sex.

2010 WL 1177453, at *4 (emphasis in original) (other internal quotation marks omitted).  The court found that summary judgment was appropriate, without reaching the question of whether Washington's conduct could be imputed to the Division, Redd's employer.  See id. & n.1.

## II.  DISCUSSION

On appeal, Redd, represented by counsel, contends that the district court erred in ruling that there were no genuine issues of material fact to be tried as to her claim of hostile work environment.  She argues principally that a reasonable jury could find that Washington's unwelcome touchings constituted discrimination because of sex and were sufficient to create an abusive working environment, altering the conditions of Redd's employment, in violation of Title VII.  For the reasons that follow, we conclude that a factfinder crediting Redd's version of the events could permissibly infer that Washington's repeated touching of Redd's breasts constituted intolerable discrimination against Redd because of her sex.

A.  Summary Judgment Principles

The granting of summary judgment is proper only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("Liberty Lobby").  "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to

evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56(e) Advisory Committee Note (1963).

The "'[e]valuation of ambiguous acts'" is a task "'for the jury,'" not for the judge on summary judgment. Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001) ("Holtz") (quoting Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998) ("Gallagher"), abrogated in part on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) ("Ellerth")). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) (quoting Liberty Lobby, 477 U.S. at 255). The court's role in deciding a motion for summary judgment "is to identify factual issues, not to resolve them." Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 156 (2d Cir. 2009) ("Jasco Tools") (emphases added); see, e.g., Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Summary judgment is inappropriate when the admissible materials in the record "'make it arguable'" that the claim has merit. See, e.g., Jasco Tools, 574 F.3d at 151 (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)). On such a motion, "[t]he evidence of the non-movant is to be believed," Liberty Lobby, 477 U.S. at 255; all permissible "inferences are to be drawn in [her] favor," id.; and the court "must disregard all evidence favorable to the moving party that the jury is not required to believe," Reeves, 530 U.S. at 151 (emphasis added). "In sum, summary judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, 'there can be but one reasonable conclusion as to the verdict,'" Kaytor v. Electric Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010) ("Kaytor") (quoting Liberty Lobby, 477 U.S. at 250), "i.e., 'it is quite clear what the truth

is,'" Kaytor, 609 F.3d at 546 (quoting Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467 (1962)).

These principles also govern this Court's review of a grant of summary judgment, which we conduct de novo. See, e.g., Kaytor, 609 F.3d at 546; Petrosino v. Bell Atlantic, 385 F.3d 210, 219 (2d Cir. 2004) ("Petrosino"); Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir. 1998) ("Distasio"). Where "[s]ummary judgment was granted for the employer, . . . we must take the facts alleged by the employee to be true." Ellerth, 524 U.S. at 747; see, e.g., Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 76 (1998); Distasio, 157 F.3d at 61 ("the non-movant will have [her] allegations taken as true" (internal quotation marks omitted)). And we are "obliged . . . to assume that all factual disputes would be resolved in her favor at trial." Petrosino, 385 F.3d at 214 n.2.

B. Hostile Work Environment Principles

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of," inter alia, "such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "'The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) ("Meritor")). Leaving aside for the moment the question of an employer's liability for the acts of its employees, see Part II.D. below, it is established "[w]ithout question, [that] when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." Meritor, 477

U.S. at 64 (emphasis added). "[S]ex discrimination consisting of same-sex sexual harassment is actionable under Title VII . . . ." Oncale, 523 U.S. at 82.

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive," Meritor, 477 U.S. at 67--both subjectively and objectively, see, e.g., Harris, 510 U.S. at 21-22--"to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor, 477 U.S. at 67 (internal quotation marks omitted). And, of course, the plaintiff must establish that the hostile or abusive treatment was because of his or her sex. See, e.g., Oncale, 523 U.S. at 80. "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' . . . Title VII is violated." Harris, 510 U.S. at 21 (quoting Meritor, 477 U.S. at 65, 67).

"[T]he kinds of workplace conduct that may be actionable under Title VII . . . . include '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" Meritor, 477 U.S. at 65 (quoting 29 C.F.R. § 1604.11(a) (1985)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris, 510 U.S. at 23.

> These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. (emphases added). To "establish[] this element, a plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently

14

pervasive, or a sufficient combination of these elements, to have altered her working conditions." Pucino v. Verizon Communications, Inc., 618 F.3d 112, 119 (2d Cir. 2010) ("Pucino") (emphases in original); see, e.g., Terry v. Ashcroft, 336 F.3d 128, 148-50 (2d Cir. 2003) (race discrimination); see generally Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998) (standards for what amounts to actionable abuse are the same for racial and sexual harassment). Isolated incidents usually will not suffice to establish a hostile work environment, although we have often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently "severe." E.g., Pucino, 618 F.3d at 119; Kaytor, 609 F.3d at 547; Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998), abrogated in part on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Torres v. Pisano, 116 F.3d 625, 631 n.4 (2d Cir. 1997), cert. denied, 522 U.S. 997 (1997); see, e.g., Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." (internal quotation marks omitted)).

The court must take care, however, not to view individual incidents in isolation. In assessing the evidence to determine whether a rational juror could infer that a reasonable employee would have found the abuse so pervasive or severe as to alter her working conditions, "especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, the court should not view the record in piecemeal fashion," Kaytor, 609 F.3d at 548 (internal quotation marks omitted). "The objective hostility of a work environment depends on the totality of the circumstances," viewed from "the perspective . . . of a 'reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'" Petrosino, 385 F.3d at 221 (quoting Oncale, 523 U.S. at 81).

15

Nonetheless, while "the central statutory purpose[ of Title VII was] eradicating discrimination" in employment, Franks v. Bowman Transportation Co., 424 U.S. 747, 771 (1976), Title VII "does not set forth 'a general civility code for the American workplace,'" Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale, 523 U.S. at 80). In Oncale, the Court noted that it had

> emphasized in Meritor and Harris[ that] the statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview."

Oncale, 523 U.S. at 81 (quoting Harris, 510 U.S. at 21 (emphases ours)). The Court noted that it regarded the objective component both as "crucial[] and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace--such as male-on-male horseplay or intersexual flirtation--for discriminatory 'conditions of employment.'" Oncale, 523 U.S. at 81 (emphasis added). It pointed out that

> [i]n same-sex (as in all) harassment cases, th[e] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field--even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

Id. at 81-82 (emphases added).

The line between complaints that are easily susceptible to dismissal as a matter of law and those that are not is indistinct. See, e.g., Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 605 (2d Cir. 2006) ("Schiano"); Holtz, 258 F.3d at 75. "On one side lie [complaints of] sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures . . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." Gallagher, 139 F.3d at 347 (internal quotation marks omitted). And on either side of the line there are, depending on the circumstances, gradations of abusiveness.

> Casual contact that might be expected among friends--[a] hand on the shoulder, a brief hug, or a peck on the cheek--would normally be unlikely to create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection. . . . And [e]ven more intimate or more crude physical acts--a hand on the thigh, a kiss on the lips, a pinch of the buttocks--may be considered insufficiently abusive to be described as 'severe' when they occur in isolation. . . . But when the physical contact surpasses what (if it were consensual) might be expected between friendly coworkers . . . it becomes increasingly difficult to write the conduct off as a pedestrian annoyance.

Patton v. Keystone RV Co., 455 F.3d 812, 816 (7th Cir. 2006) ("Patton") (internal quotation marks omitted) (emphases added). "[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment." Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001).

Most of the above principles have been established in cases involving heterosexual conflicts. In same-sex harassment cases, however, an inference that physical contact was because of the employee's sex may be less evident.

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual

17

activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex."

Oncale, 523 U.S. at 80-81 (emphases added) (original emphasis omitted).

"[T]he question of whether considerations of the plaintiff's sex 'caused the conduct at issue often requires an assessment of individuals' motivations and state of mind.'" Kaytor, 609 F.3d at 548 (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (emphasis ours)). Issues of causation, intent, and motivation are questions of fact. See, e.g., Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); Pullman-Standard v. Swint, 456 U.S. 273, 287-90 (1982). Although summary judgment in discrimination cases is "fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case," Distasio, 157 F.3d at 61 (sex discrimination); see, e.g., McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (race discrimination); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (age discrimination), cert. denied, 534 U.S. 993 (2001), "when, as is often the case in sexual harassment claims," fact questions such as "state of mind or intent are at issue," summary judgment "should be used sparingly," Distasio, 157 F.3d at 61 (internal quotation marks omitted); see, e.g., Kaytor, 609 F.3d at 548; Schiano, 445 F.3d at 605.

18

Likewise, "[t]he question of whether a work environment is <u>sufficiently</u> hostile to violate Title VII is one of fact." <u>Holtz</u>, 258 F.3d at 75 (emphasis added); <u>see</u>, <u>e.g.</u>, <u>Schiano</u>, 445 F.3d at 605 ("the line between boorish and inappropriate behavior and actionable sexual harassment . . . is admittedly indistinct, [and] its haziness counsels against summary judgment" (internal quotations omitted)). The interpretation of ambiguous conduct is "an issue for the jury." <u>Gallagher</u>, 139 F.3d at 347.

> The EEOC Guidelines emphasize that <u>the trier of fact</u> must determine the existence of sexual harassment in light of "the record as a whole" and "the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." 29 CFR § 1604.11(b) (1985).

<u>Meritor</u>, 477 U.S. at 69 (italics added).

C. <u>The Record in the Present Case</u>

If Redd had merely asserted sexual advances in conclusory terms, we would agree with the summary dismissal of her sexual harassment claim. However, her assertions--although perhaps less detailed than they may be at trial, now that she is no longer proceeding <u>pro se</u>--were far from conclusory. Taking the evidence in the light most favorable to Redd and accepting her version of the events as true, as we are required to do and a jury would be permitted to do, we have several difficulties with the district court's conclusions that no rational juror could find that Washington had sexually abused Redd because of her sex and that the abuse was not sufficiently severe to create a hostile work environment in violation of Title VII.

According to Redd's sworn statements, Washington touched Redd's breasts on three occasions. Redd characterized Washington's touches in a variety of ways. In the first incident, which occurred in Washington's office, Washington "brushed" against Redd's breasts, but did so in a way that was sufficiently substantial to unnerve Redd and cause her to "spill[] water . . . all over the transfer list" she was reviewing. (Redd Dep. 142.) In the second incident, Washington "came up" to Redd in a hallway and "touched" and "rubbed up against" Redd's breasts. (Id.) In these incidents, Washington "felt [Redd's] breasts." (Id. at 141 (emphasis added).) In the third incident, Washington came over to Redd who was sitting at a computer in a secretarial area and "reached over and touched" Redd's breasts. (Id. at 142-43.) There is nothing conclusory about these accusations.

Redd inferred that Washington's touching, feeling, and rubbing up against Redd's breasts were "homosexual advances" (Complaint ¶ 8). We see no principled reason why a jury, considering the evidence of repeated touching of such gender-specific body parts, would not be permitted to draw the same inference. Although Washington denied that she had "sexually harass[ed]" Redd or "touch[ed] PO Redd in any inappropriate manner" (Washington Aff. ¶ 6), the jury would not be required to believe those denials; hence the district court, in determining whether the Division was entitled to judgment as a matter of law, was required to disregard them.

The court's statement that there was "no basis for concluding that Washington's conduct was physically threatening," 2010 WL 1177453, at *3, is contradicted by the above evidence that Washington in fact repeatedly made physical contact with--and repeatedly felt--intimate parts of Redd's body. Plainly this was unwelcome to Redd; she "backed away from [Washington] to refuse her advances" (Verified Administrative Complaint ¶ 7); she tried to avoid Washington, but

20

Washington, although not directly supervising Redd, repeatedly called Redd into her office; and because of Washington's prior touchings, Redd feared going into Washington's office. (See Redd Dep. 141, 142, 145.) The court itself determined that a jury could reasonably find that Redd subjectively perceived Washington's conduct as abusive; in the circumstances of this case, a jury could as easily find that the atmosphere Washington created was physically threatening. Moreover, given Redd's testimony that Washington came up to her and rubbed up against her breasts "in front of [another] parole officer" (id. at 142), we believe that a jury could permissibly find that Washington's conduct was humiliating.

Further, the district court, in finding that "Washington's alleged acts consisted of relatively minor" and "incidental physical contact," 2010 WL 1177453, at *3 (emphases added), did not view the record in the light most favorable to Redd or credit inferences that were permissible from her descriptions of the events she physically experienced. The repeated touching of intimate parts of an unconsenting employee's body is by its nature severely intrusive and cannot properly be characterized as abuse that is "minor." This is not a manner in which women "routinely interact," Oncale, 523 U.S. at 81; and it is not conduct that is normal for the workplace. "When entering a workplace, reasonable people expect to have their autonomy circumscribed in a number of ways; but giving up control over who can touch their bod[ies] is usually not one of them." Patton, 455 F.3d at 816.

Nor, with the record viewed as a whole and in the light most favorable to Redd, could Washington's physical contacts properly be characterized as "incidental." The first occurred after Redd had been called into Washington's office; the second occurred when Redd and another PO were

talking in a hallway, and Washington came up to Redd and rubbed up against Redd's breasts; the third occurred when Washington crossed a room to where Redd was working at a computer, and reached over and touched Redd's breasts. Thus, as to each instance, a jury could find that Washington, without any apparent legitimate need had contrived to be in close proximity to Redd, and had touched her breasts.

The district court's rejection of Redd's claim on the ground that "the alleged incidents were episodic, rather than continuous or concerted," 2010 WL 1177453, at *3, likewise did not take the record in the light most favorable to Redd, as it did not take into account "the nature of the sexual advances," 29 C.F.R. § 1604.11(b), or "the record as a whole," id. Although the court had mentioned that severity was a consideration, it thereafter referred only to the least severe form of Washington's touches that Redd had mentioned--"brushe[s]"--rather than to Redd's testimony that Washington "rubbed up against" and "felt" her breasts. Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment, and Redd testified that Washington engaged in that conduct three times. The evidence that Washington repeatedly touched Redd's breasts; that Washington never apologized or indicated in any other way that her touchings were accidental; that Washington repeatedly requested that Redd come into her office even though she was not Redd's immediate supervisor; and that Redd, apprehensive of further repetition, consequently felt the need to avoid Washington, would allow a rational juror to find that Washington's conduct was not only severe, but pervasive.

In concluding that "no reasonable jury could find Washington's conduct to be so severe or pervasive as to be objectively hostile or abusive," 2010 WL 1177453, at *3, the district court cited

22

two cases that it read as involving "similar allegations": Quinn v. Green Tree Credit Corp., 159 F.3d 759, and Lewis v. North General Hospital, 502 F.Supp.2d 390. We find both cases distinguishable. In Quinn, the only allegation of touching before us was that the plaintiff's supervisor on one occasion had touched her breast with some papers he was holding. See 159 F.3d at 768. There was no suggestion that he had engaged in the substantially more intrusive behavior alleged here, of repeatedly touching her with his hands or any other part of his body, or that he had "felt" her breasts.

In Lewis, which, as a district-court decision, is not binding on this Court, the plaintiff was openly a male homosexual, the supervisor was openly a female homosexual, and the plaintiff's claim of harassment on the basis of sex was a belated addition to other Title VII and state-law complaints of discrimination on bases other than sex. See 502 F.Supp.2d at 404, 395. In addition, the plaintiff in that case, who complained that the supervisor on four occasions had touched him with her breasts, characterized the first instance as "accidental[]," id. at 403, and acknowledged that in every instance she had apologized, see id. at 404 n.9. Here, in contrast, Redd does not concede that any of Washington's touchings were accidental, and there is no evidence that Washington apologized.

The district court here stated that in the present case too, "[e]ven drawing all inferences in Redd's favor, the contact may have been purely accidental," 2010 WL 1177453, at *3 (emphasis added). This rationale suffers two major flaws. First, it is a premise-denying fallacy. Given the evidence that Washington repeatedly went out of her way to make those contacts with Redd, always made contact with the same part of Redd's body, never apologized, and "rubbed up against" and "felt" Redd's breasts, Washington's touchings could not be considered "accidental" if all the inferences are drawn in Redd's favor. Second, the rationale that Washington's touchings "may" have been

23

unintentional implied that Redd could not defeat summary judgment without showing that Washington's touchings were necessarily intentional. At the summary judgment stage, however, Redd had the burden only of showing that there was a genuine issue of material fact to be tried. Although the Division argues that Washington's touchings of Redd were "ambigu[ous]" (Parole Division brief on appeal at 15), the interpretation of whether they were accidental or not--and whether or not they were because of Redd's sex–were issues of fact for the jury to decide, not issues for the court to resolve as a matter of law.

Finally, we cannot accept the district court's view that "[a] reasonable jury could not find that, more likely than not, Washington brushed up against Redd because she was female," id. at *4 (emphases added), or that the "jury would have to speculate as to Washington's underlying motivation--if any--for brushing up against Redd" id. (emphasis added). First, characterizing Washington's actions in the least abusive way described by Redd, rather than acknowledging Redd's testimony that Washington "rubbed up against" and "felt" Redd's breasts, did not assess the record in the light most favorable to Redd. Second, although the district court found it material that "Redd d[id] not attribute any suggestive or sexual remarks to Washington," id., a factfinder, instructed to use "[c]ommon sense," Oncale, 523 U.S. at 82, would be entitled to draw inferences as to intent and motivation from conduct as well as from words. If the claim were that a supervisor--of either gender-- stated to a female employee "I want to feel your breasts," or stated to a male employee "I want to feel your penis," a jury could easily infer that that stated desire was because of the employee's sex. A district court could not properly rule as a matter of law that that gender-specific harassment was not because of the employee's sex. It is no more permissible to rule as a matter of law that the supervisor's

24

harassment was not because of the employee's sex when the supervisor repeatedly--albeit silently-- touched, rubbed up against, and felt those gender-specific, intimate parts of the employee's body. Given the permissible inference that Washington's touchings were not accidental, we cannot affirm a dismissal that, in effect, holds that such repeated sexually abusive, gender-specific actions are less probative than words.

So far as we have seen in the record, Washington has never denied outright Redd's allegations (as contrasted with some of Redd's elaborations on those allegations). Washington, at her deposition, said that she did not understand what was "mean[t] by physical contact" (Washington Dep. 6); and she asked for an explanation as to what was meant when Redd asked, "Did you touch me in any appropriate manner" (id.). Redd clarified by asking did you "[p]ut your hands on me?" (Id.) Although questions are not evidence, in this instance in which Redd, who was then proceeding pro se, was attempting to elicit evidence in a face-to-face confrontation with the person she was accusing, her question seems indicative of a detail that Redd can be expected to testify to at trial when questioned professionally by her counsel. Washington denied putting her "hands" on Redd (id.) and can be expected to testify at trial, consistently with her affirmation in support of summary judgment, that she did not touch Redd "in any inappropriate manner" and did not "make any other inappropriate physical contact with" Redd (Washington Aff. ¶ 6).

The decision as to which witness's version of the events should be credited is one to be made by a factfinder at trial, not by the court as a matter of law. The fact that Redd did not provide detail in her sworn submissions (and apparently was not questioned in her deposition) as to such matters as the duration of Washington's touchings, or what parts of Washington's body touched Redd's

25

breasts, did not warrant the summary dismissal of her claim. Just as "a plaintiff, to prevail, need not recount each and every instance of abuse to show pervasiveness," Pucino, 618 F.3d at 119-20, a plaintiff need not, in order to show severity, motivation, or intent, give every detail of the specific intimate touchings she has described.

In sum, questions as to Washington's conduct and motivation, and as to and whether a reasonable person in Redd's position would have found Washington's conduct severely abusive, are questions of fact. A jury, of course, would not be required to credit Redd's testimony describing Washington's conduct and would not be required to draw inferences in Redd's favor. But that testimony and those inferences could not properly be rejected by the court as a matter of law.

D. Liability of the Division for Washington's Conduct

An employer is presumptively liable for sexual harassment in violation of Title VII if the plaintiff was harassed not by a mere coworker but by someone with supervisory (or successively higher) authority over the plaintiff, although in certain circumstances an affirmative defense may be available. See, e.g., Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. If the "harassment culminate[d] in a tangible employment action, such as discharge, demotion, or undesirable reassignment," the employer is held strictly liable, and "[n]o affirmative defense is available." Ellerth, 524 U.S. at 765; see, e.g., Faragher, 524 U.S. at 808.

In the absence of a tangible employment action, the employer may avoid liability by establishing, as an affirmative defense on which it has the burden of proof, "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing

26

behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765; see Faragher, 524 U.S. at 807-08; Ferraro v. Kellwood Co., 440 F.3d 96, 101-02 (2d Cir. 2006); Petrosino, 385 F.3d at 225.

The Division in the present action asserted such an affirmative defense in its answer to the Complaint, but it is not clear from the present record whether the defense is available. Redd has complained that Washington's harassment on September 15 culminated in a suspension that began on September 16, the length of which an arbitrator found was unwarranted, and the results of which included Redd's loss of priority on a transfer list and an undesirable reassignment to an office where her parolee supervision responsibilities exposed her to greater dangers. (See, e.g., Redd brief on appeal at 6, 7, 33-36.) Neither the availability nor the viability of the Division's defense was fully briefed in the district court, and that court did not address the defense because of its ruling that Redd's hostile work environment claim failed as a matter of law, see 2010 WL 1177453, at *4 n.1.

To the extent that the affirmative defense is available, we note that the record suggests that there are factual issues to be tried. In asserting the defense, the Division did not indicate that it had taken any preventive or corrective action; rather, it contended that no such action was required because Redd did not sufficiently complain about Washington's conduct. It is undisputed that, with respect to Washington's alleged sexual harassment, Redd did not file complaints in writing; she testified in her deposition that to file such complaints would have subjected her to criticism from her coworkers (see Redd Dep. at 143-45). However, Redd testified that she complained orally to Burgos. (See id. at 144-45.) Burgos, the Division's Director of Human Resources, acknowledged that his

27

office investigates harassment complaints and that it disciplines supervisors found to be engaging in "activity that could be described as sexually harassing" (Burgos Dep. 22-23). And despite testifying that he did not recall whether Redd had complained about Washington "directly" to his office (id. at 51), his testimony indicated that it was sufficient for Redd to make a complaint directly to Burgos himself: He testified as a general matter that "[i]f you made a complaint to me or my office, . . . it would be investigated." (Id. at 6 (emphasis added).)

Burgos did not dispute Redd's assertion that she had complained to him that Washington was sexually harassing her. Rather, in his affirmation he stated that he "did not recall" receiving any "written sexual harassment complaint by PO Redd against Area Supervisor Washington" (Burgos Aff. ¶ 9 (emphasis added)). In his deposition, he stated "[his] recollection . . . that [Redd] complained that Ms. Washington bumped" Redd and that Redd "viewed that as sexual harassment." (Burgos Dep. 50-51.) Redd, conducting Burgos's deposition pro se, immediately disputed Burgos's characterization of Redd's description to him of Washington's actions, stating, "I didn't put in the complaint that she bumped me. I put in the complaint that she felt my breast on three different occasions" (id. at 51 (emphases added)). While Redd's colloquy is not evidence, her deposition testimony that she had complained about Washington to Burgos is evidence, and we think it well within the leeway that is normally to be afforded a pro se litigant for the court to infer that such a face-to-face assertion of detail as to precisely what she had reported would be included in her testimony at trial. In any event, as a jury would not be required to believe Burgos's testimony that Redd, in complaining to him, had described Washington's physical contact as simply a "bump[ing]," a court considering whether the Division has established its defense as a matter of law would be required to disregard that characterization.

28

In sum, if the affirmative defense is available, there appears to be a factual dispute to be resolved as to the sufficiency of Redd's complaints about Washington's conduct.

## CONCLUSION

We have considered all of the Division's arguments in support of the grant of summary judgment and have found them to be without merit. The judgment of the district court is vacated to the extent that it dismissed Redd's hostile work environment claim of sexual harassment, and the matter is remanded for further proceedings on that claim.