*Jill S. Meyer, M.D. v. David J. Shulkin*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of October, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> DENNY CHIN,
> *Circuit Judges*,

---------------------------------------------------------

JILL S. MEYER, M.D.,

> *Plaintiff-Appellant*,

v.                                                                    16-3562

DAVID J. SHULKIN, Secretary, Department of Veterans Affairs,

> *Defendant-Appellee*.

---------------------------------------------------------

| | |
|---|---|
| For Plaintiff-Appellant: | ALAN E. WOLIN, Wolin & Wolin, Jericho, New York. |
| For Defendant-Appellee: | BRIDGET M. ROHDE, Acting United States Attorney, VARUNI NELSON & JAMES R. CHO, Assistant United States Attorneys, Eastern District of New York, Brooklyn, New York. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Irizarry, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Dr. Jill S. Meyer ("Meyer") appeals from the September 30, 2016 order of the United States District Court for the Eastern District of New York (Irizarry, *C.J.*), adopting the findings of a July 28, 2016 Report and Recommendation (Tiscione, *M.J.*) and granting the defendant's motion for summary judgment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### A. Background

From December 1994 to February 2004, Meyer worked as a psychiatrist for the New Jersey Veterans' Affairs Medical Center (the "New Jersey VA Center"). Meyer received many formal reviews during her employment there. Although they contained some scattered praise, the reviews were mixed to negative, and regularly commented on Meyer's poor time management, documentation, and interpersonal skills. Two reports expressed concern that Meyer's "interpersonal conflicts and difficulties have . . . had significant adverse impact on treatment team efficiency." J.A. 372–73, 374–75. Another report similarly noted that Meyer "[n]eed[ed] [r]eview and [p]ractice" in her ability to "[b]uild[] an atmosphere of trust by being trustworthy," and "[p]rovid[e] support to [her] fellow employees in accomplishing [their] mission." J.A. 128. Meyer herself admitted during discovery that her evaluations at the New Jersey VA Center were "poor" and "not very good." J.A. 492, 493–94.

In February 2004, Meyer voluntarily resigned from her position with the New Jersey VA Center. In January 2009, she applied for a psychiatrist position in the VA Medical Center in

2

Syracuse, New York ("the Syracuse VA Center"). During her interview, she met with Dr. Helen MacGregor ("MacGregor"), the Chief of Psychiatry, and Linda Zavalauskas ("Zavalauskas"), a human resources representative. Meyer mentioned her admittedly "poor" evaluations from the New Jersey VA Center in her discussion with MacGregor. Meyer recalls MacGregor responding that it "wasn't a big deal." J.A. 456.

Shortly after the interview, MacGregor and the Syracuse VA Center staff recommended Meyer for the vacant position. On January 29, 2009, the Syracuse VA Center asked the National Personnel Records Center to send over Meyer's Official Personnel Folder ("OPF"). On February 6, 2009, the Syracuse VA Center's human resources manager, Mark Antinelli ("Antinelli"), sent Meyer an offer letter. The letter explicitly noted that the offer was "contingent upon a suitability determination that will be made after [Meyer] completed the application for employment and any related documents," and after "a review of [Meyer's] references [and] credentials." J.A. 113.

The Syracuse VA Center received Meyer's OPF after Antinelli sent his letter. Antinelli and another Syracuse VA employee, Dr. Judy Hayman, reviewed Meyer's OPF. After doing so, they both concluded that the offer letter should be retracted. Antinelli later explained in an affidavit that "after [he] reviewed [Meyer's] OPF, [he] determined that the performance and interpersonal problems documented therein made [Meyer] unsuitable for employment at the Syracuse [VA Center]. Said another way, the employment offer was retracted due to her previous VA work record." J.A. 427.

On February 24, 2009, Antinelli informed Meyer over the phone that he was retracting the offer due to the "low satisfactory rating[s] on her proficiency reports." J.A. 46. Antinelli sent Meyer a formal retraction letter later that day. The letter of retraction stated: "After carefully reviewing [your OPF], it has been determined that the performance and interpersonal problems

3

documented therein make you unsuitable for employment with our Medical Center." J.A. 381.

On June 3, 2009, Meyer filed a complaint of employment discrimination. She claimed that Antinelli discriminated against her because of her age, religion, and national origin, and that Antinelli rescinded her offer not because of her performance evaluations, but as an act of reprisal for the numerous EEO complaints she filed during her employment at the New Jersey VA Center. On March 16, 2012, an administrative law judge dismissed Meyer's claim, finding that Meyer had not carried her burden of demonstrating either discrimination or retaliation. Among other things, the judge noted that Meyer failed to establish that Antinelli even knew about her EEO activity when he decided to rescind the offer.

On November 12, 2012, Meyer filed the instant Title VII lawsuit in the Eastern District of New York, naming then-Secretary of the Department of Veterans Affairs Eric K. Shineski as the defendant.[1] Like her EEO complaint, Meyer's complaint here alleges discrimination on the basis of age and religion, as well as retaliation. On or about April 6, 2015, the defendant moved for summary judgment. Meyer opposed this motion only as to her retaliation claim, and she abandoned her age and religious discrimination claims.

The district court referred Meyer's case to a magistrate judge. In a commendably clear and thorough Report & Recommendation ("R & R"), the magistrate judge recommended that the district court grant the defendant's motion for summary judgment. On September 30, 2016, the district court adopted the R & R in its entirety, granted the defendant's motion for summary judgment, and dismissed Meyer's case. The question for our review is whether the district court erred in granting the defendant's motion for summary judgment on Meyer's retaliation claim.

---

[1]  Since then, Shineski has been replaced by David J. Shulkin, the current named defendant.

4

**B. Discussion**

We review a district court's grant of summary judgment *de novo*. *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). In doing so, we "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in [her] favor." *Id.* Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Put another way, summary judgment is appropriate if, "even after drawing all inferences in the light most favorable to [the plaintiff], no reasonable jury could have issued a verdict in [her] favor." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

We analyze Title VII retaliation claims by using the three-step "burden-shifting evidentiary framework" that the Supreme Court outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). At step one, the plaintiff must demonstrate "a *prima facie* case of retaliation." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).[2] If the plaintiff successfully establishes a *prima facie* case of retaliation, then she has created a "presumption of retaliation" and we move to step two. *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). At step two, the defendant must

---

[2] To do so, she must establish: (1) participation in protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action on behalf of the defendant; and (4) "a causal connection between the protected activity and the adverse employment action." *Hicks*, 593 F.3d at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

"articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (quoting *Jute*, 420 F.3d at 173). If the defendant does so, then "the presumption of retaliation dissipates," *id.*, and we move to step three. At step three, the plaintiff must demonstrate "that the desire to retaliate was the but-for cause of the challenged employment action," and if she fails to do so, her claims are dismissed. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70, 73 (2d Cir. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2528 (2013)).

We affirm the grant of summary judgment here because Meyer's claims fail at step one. That is, even after viewing all of the admissible evidence in Meyer's favor, she still fails to carry her *de minimis* burden of showing that a rational finder of fact might conclude that her EEO activity caused Antinelli to rescind her offer. *See Hicks*, 593 F.3d at 164 (quoting *Jute*, 420 F.3d at 173). Accordingly, the district court did not err in granting the defendant's motion for summary judgment.

Meyer failed to offer any evidence to show a causal link between her EEO activity and Antinelli's decision. A plaintiff can establish *prima facie* causation "directly"—such as "through evidence of retaliatory animus directed against the plaintiff by the defendant"—or "indirectly," through circumstantial evidence. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Ultimately, however, causation is a question of fact. *See Redd v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012). Thus, a court may grant a defendant's motion for summary judgment in a Title VII retaliation suit only if there is "no genuine dispute" that the plaintiff's protected activity, so far as the evidence stands, was unrelated to the defendant's adverse employment action. *See* Fed. R. Civ. P. 56(a). In this case, then, summary judgment is appropriate if "no reasonable jury" could find that Meyer's EEO activity caused Antinelli to withdraw Meyer's offer. *See Jeffreys*, 426 F.3d at 554.

6

We agree with the district court that no reasonable jury could find for Meyer on this issue. No rational finder of fact could conclude that Antinelli even *knew* about Meyer's EEO activity when he decided to terminate her offer. Meyer's sole pieces of evidence to support this claim are that: (1) she believes that she saw references to her EEO activity when she reviewed her OPF in preparing for litigation, and (2) she speculates that the chief of human resources at the New Jersey VA Center informed Antinelli about her EEO activity. But she offers no evidence to back up either of these claims.[3] Antinelli swore under penalty of perjury that he was not aware of Meyer's EEO complaints. And the record contains a "true and correct copy" of Meyer's entire OPF. J.A. 51. Meyer does not point to a single page in this copy that references her EEO activity, and after a thorough review we could not find such a reference. In short, Meyer's evidence consists solely of the "unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)), and "conjecture," *id.* (quoting *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir. 1992)), that we have held do not suffice to defeat a motion for summary judgment, *see id.*; *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the [Title VII] discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

On appeal, Meyer argues as follows: (1) Zavalauskas and MacGregor knew about Meyer's poor reviews at the New Jersey VA Center, and decided to recommend that she be hired nonetheless; (2) accordingly, "nothing that was contained in her OPF concerning her job performance would have been a surprise"; and (3) thus, her EEO activity *must* have been mentioned in her OPF, since "[t]he only new fact that [Antinelli] could have ascertained upon

---

[3] On appeal, Meyer contends that "[t]he EEO complaints were part of [her] official file," and that her OPF contained correspondence on EEO-related matters. Pl.-Appellant's Br. at 26. Her sole citations to the record to support these assertions, however, are her own speculative statements in deposition testimony.

7

receipt of the OPF was notice as to the extent of [her] prior EEO activity." Pl.-Appellant's Br. at 25. This argument, however, misses the mark. First, Meyer never disputes that the OPF in the record is a "true and correct copy" of her OPF, and, as stated above, the OPF in the record contains no reference to her EEO activity. Second, although Meyer did generally mention her evaluations to Zavalauskas and MacGregor, there is no indication that she told them about the poor marks she received for interpersonal skills. Antinelli specifically considered Meyer's interpersonal skills—a description of which was laid out in Meyer's OPF—to be a critical factor in his decision to rescind her offer. *See* J.A. 428 ("I do not believe [that Meyer] possesse[d] the interpersonal skills necessary to establish and maintain effective work relationships. The ability to establish and maintain effective work relationships are [*sic*] essential skills to successful employment."). Meyer is therefore incorrect in claiming that "[t]he only new fact that [Antinelli] could have ascertained upon receipt of the OPF was notice as to the extent of [Meyer's] prior EEO activity," Pl.-Appellant's Br. at 25.

In sum, because Meyer fails to carry her burden of establishing *prima facie* retaliation, the district court properly granted the defendant's motion for summary judgment on her retaliation claim. We have considered Meyer's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8