Fedie R. REDD, Plaintiff,

v.

NEW YORK STATE DIVISION OF
PAROLE and José Burgos,
Defendants.

No. 07–CV–120 (NGG)(LB).

United States District Court,
E.D. New York.

Jan. 24, 2013.

394

Gregory Scott Chiarello, Rebecca J. Osborne, Vladeck, Waldman, Elias & Engelhard, P.C., New York, NY, for Plaintiff.

John E. Knudsen, Frederick Hongyee Wen, Office of the Attorney General–State of NY, New York, NY, for Defendants.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

On January 28, 2013, this court will begin a jury trial to resolve Plaintiff Fedie R. Redd's sexual harassment claim against Defendant New York State Division of Parole ("DOP"). The court assumes familiarity with the factual and procedural background, which can be found in the Second Circuit's decision in this case, *see Redd v. N.Y. State Div. of Parole*, 678 F.3d 166 (2d Cir.2012), and this court's recent decision granting summary judgment on Redd's retaliation claim against DOP and her state law claims against Defendant José Burgos

(*see* Dec. 20, 2012, Mem. & Order (Dkt. 91, 923 F.Supp.2d 371, 2012 WL 7148220) (the "December Opinion")). Before the court are three motions: (1) Redd's motion for reconsideration of the December Opinion (Dkt. 92); (2) DOP's motion in limine (Dkt. 95); and (3) Redd's motion in limine (Dkt. 98). For the reasons set forth below, Redd's motion for reconsideration is DENIED, and the parties' motions in limine are each GRANTED IN PART and DENIED IN PART.

## I. REDD'S MOTION FOR RECONSIDERATION

The standard for a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Such motions may be granted: (1) if the court overlooks critical facts; (2) if it overlooks controlling decisions that could have changed its decision, *see id.*; (3) in light of an intervening change in controlling law; (4) in light of new evidence; (5) to correct clear error; or (6) to prevent manifest injustice, *see Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992). "The moving party must also demonstrate that any available factual matters or controlling precedent were presented to the court on the underlying motion." *Gayle v. Harry's Nurses Registry, Inc.*, No. 07–CV–4672 (NGG)(MDG), 2010 WL 5477727, at *3 (E.D.N.Y. Dec. 20, 2010) (alteration and internal quotation marks omitted). "A motion for reconsideration is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion nor a chance for a party to take a second bite at the apple." *Norton v. Town of Islip*, No. 04–CV–3079 (NGG)(WDW), 2013 WL 84896, at *3 (E.D.N.Y. Jan. 7, 2013) (alterations and internal quotation marks omitted).

Redd makes two arguments for why the court should reconsider its December Opinion, neither of which has merit.

■ First, Redd argues that the court overlooked the probative value of Burgos's deposition testimony. (*See* Pl. Recons. Mem. (Dkt. 93) at 2–3.) One of the reasons the court provided for its conclusion that Burgos's deposition testimony did not qualify as "direct evidence" of retaliation was that, because "the decisionmaker ultimately responsible for Redd's termination was the arbitrator"—not Burgos—"it require[d] an[ ] inferential step to conclude" from his testimony that Redd's sexual harassment accusations "influenced the ultimate decision to terminate her." (December Opinion at 386, at *14.) Redd argues that this reasoning overlooks the Supreme Court's decision in *Staub v. Proctor Hospital*, —— U.S. ——, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011), which held that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under the [Uniformed Services Employment and Reemployment Rights Act ('USERRA') ]." *Id.* at 1194.

This argument is not a proper ground for Redd's motion for reconsideration because Redd failed to raise it in connection with the underlying summary judgment motion, and has no apparent excuse for this failure. *See Norton*, 2013 WL 84896, at *3; *Gayle*, 2010 WL 5477727, at *3; *Richard Feiner & Co. v. BMG Music Spain*, No. 01–CV–0937 (JSR), 2003 WL 21496812, at *1 (S.D.N.Y. June 27, 2003) ("[P]laintiff is advancing new arguments without excuse as to why these arguments were not raised previously, and these ar-

guments are therefore not cognizable on a motion for reconsideration."). In any event, even assuming that *Staub* applies to Title VII retaliation claims rather than USERRA claims alone (a possibility that *Staub* implied but did not decide), the case does not affect the court's analysis. The court did not suggest that Burgos's testimony was not *at all* probative of retaliation; to the contrary, it noted that "Burgos's statement must be considered along with the other [ ] evidence of retaliation that Redd has proffered." (December Opinion at 387, at *15.) The portion of the December Opinion that Redd criticizes was part of the court's analysis of whether Burgos's deposition testimony constitutes *direct* evidence of retaliation—that is, "evidence tending to show, without resort to inference, the existence of a fact in question." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183 (2d Cir.1992). (*See* December Opinion at 385, at *12.) *Staub* does not change the court's conclusion that, because Burgos was not the ultimate decisionmaker, "it requires an[ ] inferential step" to conclude that Redd's sexual harassment allegations influenced the decision to terminate her, and thus that his testimony is not direct evidence of retaliation. Nor does *Staub* change the court's conclusion that this required inferential step, along with two others the court discussed (*see* December Opinion at 385–88, at *13–15), renders the inference of causation raised by Burgos's statements "too weak to overcome the significant weight given to the arbitrator's decision" (*id.* at *18 (citing *Collins v. N.Y. City Trans. Auth.*, 305 F.3d 113, 119 (2d Cir.2002))).[1]

Second, Redd argues that the court overlooked facts concerning DOP employees that she claims were similarly situated

---

1. Redd does not argue that *Staub* overruled *Collins*—which the Second Circuit has recently reaffirmed, *see Hedlund v. N.Y. City Trans.* *Auth.*, No. 11–CV–4861, 2013 WL 48693, at *2 (2d Cir. Jan. 4, 2013)—or that this court did not apply *Collins* properly.

to her. (Pl. Recons. Mem. at 4.) The first of these purported facts is "defendants' admission that virtually any instance of dishonesty was a firing offense regardless of the [parole officer's] employment history," a policy that Redd claims was not applied "to other [parole officers] such as Deborah Liehmann and Wayne Spence [ ] who allegedly made false statements in Unusual Incident Reports." (*Id.*) As in her summary judgment opposition (*see* Pl. Summ. J. Opp'n. (Dkt. 80) at 6, 10, 20), Redd bases this allegation on a single statement in Burgos's deposition: that making a false statement "would ... almost a hundred percent of the time drive a decision to propose to terminate someone" (Pl. Recons. Mem. at 4).

The court did not "overlook" Redd's argument but simply chose not to address it because it makes little sense. If Liehmann and Spence made false statements and were not fired, then DOP surely did *not* have an absolute policy of firing probation officers who made false statements. And if so, this would mean not that DOP retaliated against Redd, but (at worst) that Burgos misstated DOP's termination policy. In any event, Burgos's isolated statement comes far from satisfying Redd's burden to provide "strong evidence" sufficient to overcome the arbitrator's decision. *Collins*, 305 F.3d at 119.

The same is true of the second fact Redd claims the court overlooked: "evidence of the comparable employment history of [parole officers] receiving lesser sanctions." (Pl. Recons. Mem. at 4.) The court concluded in its December Opinion that Redd had "failed to show [that her alleged comparators] were similarly situated 'in all material respects'" (December Opinion at 391, at *17 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997))), particularly because of her failure to show that these alleged comparators had a similar disciplinary history

to her own (*see id.* at 390, at *17 (citing several cases for the proposition that "employees are not similarly situated if they have materially different disciplinary records")). Redd claims that the court overlooked a Counseling Memorandum stating that Spence "repeatedly demonstrated a propensity to misrepresent events [and] to intentionally make false and misleading statements." (Pl. Recons. Mem. at 4.) But the fact that Spence had supposedly demonstrated a "propensity" to make false statements does not mean that he was *disciplined* for those statements, let alone that his disciplinary history was comparable to Redd's (which was substantial). And Redd has still failed to provide disciplinary histories for any of her other purported comparators. Thus, Redd still has not demonstrated that another employee with a similar disciplinary history was not fired for an offense similar to Redd's, and the court's conclusion is unchanged.

For these reasons, Redd's motion for reconsideration of the December Opinion is denied.

## II. THE PARTIES' MOTIONS IN LIMINE

DOP has filed a motion in limine to: (1) allow DOP to cross-examine Redd on her allegedly false statements to the police and DOP; (2) preclude reference by Redd to claims that the court has previously dismissed; (3) preclude the testimony of Pauline Hill and Clifford Crawford; (4) deny Redd's deposition designations of witnesses; and (5) preclude Redd from introducing her performance evaluations and commendations during her employment at DOP. (Def. Limine Mem. (Dkt. 97) at 1.) Redd has filed a motion in limine to exclude: (1) evidence concerning complaints or grievances other than her sexual harassment claim against Sarah Washington; (2) evidence concerning Redd's disciplinary history with DOP; (3) evidence

concerning Redd's arrest and any police reports related to that arrest; (4) evidence concerning Redd's dismissed discrimination claims; (5) evidence concerning other litigation in which Redd was or is involved; (6) evidence concerning Washington's sexual orientation; (7) evidence or argument suggesting that jurors, as taxpayers, would be responsible for any monetary award to Redd; (8) evidence concerning Redd's former pro se status or her acquisition of counsel; (9) any hearsay evidence; and (10) evidence unrelated to this case. (Pl. Limine Mem. (Dkt. 99) at 1–2.)

The parties' various requests can be grouped into several categories, and will be addressed accordingly.

## A. Redd's Other Complaints, Grievances, and Lawsuits

■ Redd asks the court to exclude any evidence concerning: (1) complaints or grievances other than her sexual harassment claim against Sarah Washington (*id.* at 3–6); (2) any determinations on those other complaints or grievances (*id.* at 9–12); and (3) other lawsuits in which Redd was or is involved (*id.* at 20–21). The court will exclude this evidence, with two exceptions: (1) DOP may present evidence pertinent to the insubordination incident in September 2005 that the court discusses below in Part II.B; and (2) DOP may cross-examine Redd regarding the allegedly false statements in 2010 that the court discusses below in Part II.C.

Other than Redd's complaints against Washington—her 2005 charge with the New York State Division of Human Rights ("SDHR") and her subsequent Complaint in this court—and the exceptions noted above, none of Redd's complaints or union grievances is probative of her sexual harassment allegations against Sarah Washington. Nevertheless, DOP argues that the court should admit this evidence because it is relevant to DOP's affirmative

defense that Redd "fail[ed] to notify the defendant of any sexual harassment." (Def. Limine Opp'n (Dkt. 107) at 3.) Redd "has testified that she did not file an internal grievance" regarding this alleged harassment "because it would subject her to internal criticism." (*Id.*) DOP argues that it "should be allowed to question plaintiff why she did not file an internal grievance in this matter," and that "the jury should be able to assess the veracity of her response with knowledge about plaintiff's multiple other internal grievances." (*Id.*)

DOP's argument is somewhat ambiguous, but it appears to suggest that Redd's extensive history of complaints and grievances makes it doubtful that Redd failed to file an internal grievance against Washington because of a fear of "internal criticism." The court questions whether such a subjective and generalized fear would have any relevance to DOP's affirmative defense. *See generally Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (employer may raise an affirmative defense to liability for an actionable hostile work environment created by a supervisor by showing "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer"). But even assuming DOP's intended questioning has some limited probative value, this probative value "is substantially outweighed by a danger of unfair prejudice, confusing the issues, ... undue delay, [and] wasting time." Fed.R.Evid. 403. As DOP points out, Redd's history of internal complaints and grievances is "extensive" (Def. Limine Opp'n at 3), and the court does not wish to delve into the details of these tenuously related complaints simply so that DOP can establish that Redd has filed a large number of them. The court is also wary of permitting DOP to ask Redd more limited questions about the number and general nature of her

prior grievances; without context, this line of questioning may unfairly suggest that Redd is a troublemaker who is not to be believed, without any substantial probative benefit.[2]

Thus, the court will exclude any evidence concerning Redd's complaints or grievances other than her sexual harassment claim against Sarah Washington, and any determinations on those other complaints or grievances, subject to the exceptions noted above.[3] If DOP chooses to introduce documents concerning complaints or grievances that *are* related to Redd's sexual harassment allegations against Washington, those documents must be introduced in redacted form so that only the admissible evidence is visible to the jury.[4] Finally, DOP has represented that it "does not seek to raise evidence pertaining to plaintiff's other lawsuits" (Def. Limine Opp'n at 5), and so Redd's request in this regard is moot.

## B. Redd's Performance History at the DOP

■ Redd argues that DOP "should be prohibited from introducing or eliciting any evidence concerning Redd's disciplinary history or alleged problems she may have had with colleagues and parolees, or exhibits referring to her discipline history." (Pl. Limine Mem. at 12 (citations omitted).) For the most part, the court agrees that this disciplinary history is inadmissible character evidence, *see* Fed. R.Evid. 404(a)(1), or, in the alternative, that its minimal relevance is substantially outweighed by the danger of prejudice, confusion of the issues, and undue delay, *see* Fed.R.Evid. 403; *see also Zubulake v. UBS Warburg LLC,* 382 F.Supp.2d 536, 541 (S.D.N.Y.2005) ("Because this is an employment discrimination case, plaintiff's character is not in issue, either as an essential element of a claim or defense.").[5]

2. The court would reach the same conclusion if DOP were attempting to introduce Redd's history of complaints and grievances for the purposes of attacking Redd's credibility in general, as opposed to supporting its affirmative defense.

3. It is unclear from Redd's papers whether she also seeks to exclude agency determinations on her complaints *against Washington.* (*Compare* Pl. Limine Mem. at 1 (asking for exclusion of "[e]xhibits and testimony concerning discrimination complaints, grievances or complaints Redd made, *with the limited exception* of evidence concerning Redd's sexual harassment claim against Sarah Washington (emphasis added) (citations omitted)), *with id.* at 9 (asking for exclusion of *"all* references to determinations on plaintiff's grievances and discrimination complaints issued by DOP or a government agency" (emphasis added)).) The court need not sort out this ambiguity because DOP has represented that it "does not intend on raising any determinations of her other grievances or complaints, with the limited exceptions of the holding on the falseness of plaintiff's 2010 reports in the 2010 arbitration … and the discipline plaintiff received" as a result of the

insubordination incident in 2005 (both of which the court will permit DOP to raise, as discussed below in Parts II.B and II.C). (Def. Limine Opp'n at 4–5.)

4. The court will inspect any such submissions before they are shown to the jury.

5. DOP argues that if Redd "give[s] testimony about her emotional distress arising from th[e] alleged sexual harassment[, i]t is possible that her testimony on this point would call into question other separate disciplinary actions that could be a possible cause for such distress, for example her termination in 2010 or her lengthy suspension in 2009." (Def. Limine Opp'n at 4.) DOP "request[s] that this issue be held in abeyance until plaintiff testifies about her emotional distress." (*Id.*) It will of course be incumbent upon Redd to demonstrate that her alleged emotional distress stemmed from Washington's alleged sexual harassment as opposed to any other factors, but the court concludes in its discretion that any attempt by Redd to prove emotional distress does not justify giving DOP license to present evidence on Redd's entire employment history; such an inquiry would

This evidence will therefore be excluded with one exception discussed below.

For the same reasons, the court agrees with DOP that the *positive* aspects of Redd's performance history should be excluded. (*See* Def. Limine Mem. at 11.) Redd is therefore precluded from introducing her satisfactory performance evaluations and commendation letters.

■ One aspect of Redd's disciplinary history may be raised by DOP. In September 2005, DOP issued Redd a "Suspension Notice of Discipline" ("NOD") containing charges of insubordination arising from Redd's alleged refusal on September 14, 2005, to comply with Washington's order to input parolee case files into DOP's computer system (the "2005 NOD"). (2005 NOD (Ex. A to Oct. 18, 2012, Wen Decl. ("Second Wen Decl.") (Dkt. 78–1)); *see also* Pl. Limine Mem. at 6; Def. Limine Opp'n at 2.) DOP sought Redd's termination. (*See* 2005 NOD at 6.) On November 1, 2005, Redd filed her charge with the SDHR alleging that Washington had sexually harassed her on three occasions, the final of which was on September 15, 2005. (Dkt. 1–11.)

This information is admissible not as propensity evidence but as evidence of Redd's motive for filing the SDHR charge. *See* Fed.R.Evid. 404(b)(2) (evidence of prior wrongdoing "may be admissible ... [for] proving motive"). The fact that Redd was disciplined by Washington may have given her a motive to retaliate against Washington by accusing her of sexual harassment, a possibility that the jury— having been properly instructed of this

limited use—should be able to take into account when gauging the credibility of Redd and Washington.[6] At the same time, the court will not permit a trial-within-a-trial regarding whether Redd was indeed insubordinate or whether the disciplinary action taken against her was proper. What is relevant is the fact that Redd was disciplined, the pertinent dates, DOP's stated basis for the disciplinary action, and its recommendation of termination—nothing more.

### C. Redd's Allegedly False Statements

■ On January 21, 2010, Redd filed a police report with the Freeport Police Department, alleging that a man named Calvin Taylor had stalked her (the "Stalking Report"). (Ex. O to Second Wen Decl. (Dkt. 78–1).) On January 25, 2010, Redd filed an "Unusual Incident Report" with DOP making similar allegations. (Ex. P to Second Wen Decl. (Dkt. 78–1).)

After an investigation, the Freeport Police Department concluded that the Stalking Report was false and, on February 5, 2010, arrested Redd and charged her with filing a false written instrument, a Class A misdemeanor. (*See* Arrest Notification (Ex. Q to Second Wen Decl. (Dkt. 78–1)).) Redd eventually received an Adjournment in Contemplation of Dismissal ("ACD") of her misdemeanor charge, which meant that if Redd served a six-month probationary period without further arrests, the charge would be dismissed. (*See* Mar. 29, 2010, Certificate of Disposition (Ex. W to Second Wen Decl. (Dkt. 78–1)); Mar. 29,

---

be distracting, unduly time-consuming, and prejudicial to Redd, and would substantially outweigh any limited probative value. *See* Fed.R.Evid. 403.

6. Redd argues that the insubordination incident "is a wholly separate matter from the sexual harassment Washington began in April

2005, months prior to the alleged insubordination." (Pl. Limine Mem. at 13–14.) Redd misses the point; the disciplinary action in September 2005 is probative not because of its proximity to the dates of Washington's alleged harassment but because it occurred soon before Redd filed her discrimination charge with the SDHR.

2010, Hr'g Tr. (Ex. X to Second Wen Decl. (Dkt. 78–1)).) On September 28, 2010, Redd's six-month probationary period ended and her criminal misdemeanor charge for filing a false written instrument was dismissed and sealed. (Def. 56.1 St. (Dkt. 76) ¶ 44; Pl. 56.1 St. (Dkt. 82) ¶ 274.)

Before Redd received the ACD, DOP issued Redd an NOD for filing a false police report and a false UIR, seeking Redd's termination (the "2010 NOD"). (*See* 2010 NOD (Ex. V to Second Wen Decl. (Dkt. 78–1)).) After a hearing, an independent arbitrator determined that Redd was guilty of the charges in the 2010 NOD and that termination was the appropriate penalty. (July 16, 2010, Arb. Op. & Award (Ex. F to Second Wen Decl. (Dkt. 78–1)).) Among other things, the arbitrator found that DOP's evidence in support of the 2010 NOD charges was "sufficiently convincing" to support Redd's guilt, and specifically that Redd had "falsely accused Mr. Calvin Taylor of following her home from her work station." (*Id.* at 20.) Redd unsuccessfully challenged the arbitrator's findings in New York Supreme Court and in the Appellate Division: in the former, a judge found that "[t]he arbitrator's award [had] ample evidentiary support" (Feb. 2, 2011, N.Y. Sup.Ct. Decision (Ex. HH to Second Wen Decl. (Dkt. 78–2)) at 2); and in the latter, the court found that "[t]he record amply support[ed] the arbitrator's findings," *Redd v. Battisti,* 94 A.D.3d 676, 943 N.Y.S.2d 84, 85 (N.Y.App. Div. 1st Dep't 2012).

DOP seeks to cross-examine Redd concerning: (1) her allegedly false police report; (2) her allegedly false UIR; (3) the arbitration decision; and (4) Redd's civil challenges to that decision. (Def. Limine Mem. at 2–5.) Redd opposes any cross-examination on these topics. (*See* Pl. Limine Opp'n (Dkt. 104) at 1–9.)

Federal Rule of Evidence 608(b) provides:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of ... the witness....

Thus, although DOP may not introduce extrinsic evidence related to the alleged false statements discussed above, it may inquire into them on cross-examination so long as: (1) "they are probative of [Redd's] character for ... untruthfulness," Fed. R.Evid. 608(b); and (2) their probative value is not substantially outweighed by a danger of unfair prejudice to Redd, *see* Fed.R.Evid. 403; *see also* Fed.R.Evid. 608(b) advisory committee's note (evidence otherwise admissible under Rule 608(b) is subject to "the overriding protection of Rule 403").

Although permitting DOP to inquire into Redd's alleged false statements on cross-examination contains some danger of prejudice to Redd, the court will permit the inquiry because it is highly probative of Redd's character for truthfulness. The fact that the Freeport Police, an independent arbitrator, and two state courts found that she had falsely accused a man of stalking her strongly suggests a willingness to lie in formal settings and submissions. The jury should be permitted to hear about these statements—as well as the various decisions finding them to be false—for the limited purpose of gauging Redd's credibility. *See, e.g., United States v. Triumph Capital Grp.,* 237 Fed.Appx. 625, 630 (2d Cir.2007) ("This Court has held that it can be appropriate to introduce false statements ... under Rule 608(b)(1) to shed light on a witness' credibility."); *Hynes v. Coughlin,* 79 F.3d 285, 293–94

(2d Cir.1996) (witness could be cross-examined regarding filing a false workmen's compensation claim because it was properly related to his character for truthfulness); *United States v. Jones,* 900 F.2d 512, 520 (2d Cir.1990) (witness could be cross-examined regarding false statements made on applications for employment, an apartment, a driver's license, a loan, and membership in an association).

Redd has a number of arguments to the contrary, none of which has merit.

First, she argues that, because she was not convicted of a crime for the allegedly false statements, DOP should not be permitted to inquire about them. (*See* Pl. Limine Mem. at 15; Pl. Limine Opp'n at 1.) That is beside the point; the Federal Rules of Evidence explicitly permit inquiry on cross-examination into *any* "specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," Fed.R.Evid. 608(b), and contain a *separate* rule permitting certain extrinsic evidence of a criminal conviction, *see* Fed.R.Evid. 609. In other words, "Rule[ ] . . . 608(b) specifically contemplate[s] conduct which does not result in a criminal conviction being admissible at trial under certain defined circumstances." *Cox v. McClellan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997).

■ Second, Redd contends that "an arrest cannot be used as evidence concerning a person's credibility." (Pl. Limine Opp'n at 1; *see also* Pl. Limine Mem. at 15–16.) She is correct that "[a]rrest *with-out more* does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness." *Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (emphasis added). (*See* Pl. Limine Opp'n at 1.) But although "[p]rior arrests may not be referenced *generally,*" they may (like other matters) be inquired into if they are "probative of [the witness's] character for truthfulness." *Johnson v. Baker,* No. 08–CV–00038, 2009 WL 3486006, at \*5 (W.D.Ky. Oct. 26, 2009) (emphasis added); *see also United States v. Baker,* No. 01–CR–028 (SPM), 2006 WL 1653530, at \*9 (N.D.Fla. June 14, 2006) ("Usually, an arrest, as opposed to a conviction, is not a proper avenue for impeaching a witness, *unless* the arrest bears on the witness' character for truthfulness." (emphasis added) (citing *United States v. Matthews,* 168 F.3d 1234, 1244 (11th Cir. 1999))); *cf. Stephen v. Hanley,* No. 03–CV–6226 (KAM)(LB), 2009 WL 1471180, at \*8 (E.D.N.Y. May 21, 2009) ("None of the unproven charges or prior arrests bear on [the witness's] character for truthfulness and, thus, are [ ] inadmissible pursuant to Rule 608."). Redd's arrest for filing a false police report is probative of her character for truthfulness, and thus may be inquired into despite the fact that the arrest did not result in a conviction. Moreover, as noted above, an independent arbitrator and two state courts found that there was substantial evidence that Redd's police report and UIR were in fact false, further enhancing the probative value of her arrest.[7]

---

7. Redd claims that DOP "acknowledge[d] that a witness's arrest history has no impeachment value." (Pl. Limine Opp'n at 5 (citing Def. Limine Mem. at 5).) Not even close. On the page of DOP's brief cited by Redd, DOP states that, "[w]hile the court in *Nibbs* [*v. Goulart,* 822 F.Supp.2d 339 (S.D.N.Y.2011) ], did not allow plaintiff's arrest history to be admitted for the purpose of impeachment b`ecause it held no value as impeachment material, *in this case plaintiff's arrest history for filing a* *false police report deals specifically with her character for truthfulness.*" (Def. Limine Mem. at 5 (emphasis added) (citing *Nibbs,* 822 F.Supp.2d at 344).) In its December Opinion, the court admonished Redd for her repeated distortions of the record. (*See* December Opinion at 376–77 n. 2, at \*4 n. 2, 377 n. 3, \*5 n. 3, 379 n. 4, \*7 n. 4.) Further failure to heed the court's warnings may result in the imposition of sanctions.

Third, Redd argues that because her misdemeanor charge was dismissed and sealed, DOP should be precluded from raising it pursuant to New York Criminal Procedure Law § 170.55(8), which states that "[t]he granting of an adjournment in contemplation of dismissal shall not be deemed to be a conviction or an admission of guilt[;] . . . the arrest and prosecution shall be deemed a nullity and the defendant shall be restored, in contemplation of law, to the status he occupied before his arrest and prosecution." (Pl. Limine Opp'n at 5.) But although Redd's ACD restores her to her previous status for the purposes of New York criminal law, that surely does not render her arrest non-probative in a federal civil case. *See Cox,* 174 F.R.D. at 34 ("The fact that [ ] criminal charges were dismissed [pursuant to an ACD] does not, in and of itself, preclude the admissibility of such conduct under the Federal Rules of Evidence. Indeed, Rule[] . . . 608(b) specifically contemplate[s] conduct which does not result in a criminal conviction being admissible at trial under certain defined circumstances); *cf. Rothstein v. Carriere,* 373 F.3d 275, 287 (2d Cir.2004) (holding that an ACD "extinguishes a malicious prosecution claim—not because the defendant has admitted guilt, but because it is a bargained-for dismissal of the criminal case" (citation omitted)).

Redd's fourth argument is that, "because [she] will deny that the statements she made were false, defendant should be prohibited from examining Redd about them." (Pl. Limine Opp'n at 4. (citing *United States v. Crowley,* 318 F.3d 401, 417–18 (2d Cir.2003) (denying cross-examination on alleged false statements where "voir dire examination established that [the witness] would deny making false accusations or lying," and where, if cross-examination on these false statements were permitted, "the only evidence before the jury on the subject would have been [the witness's] denial of falsehood")).) Al-

though it is almost never productive to question a witness only about *whether she has made a false statement* if she will simply deny the statement's falsity, in this case the jury will hear much more than just Redd's "denial of falsehood." *Crowley,* 318 F.3d at 417. Redd cannot in good faith deny that she was arrested for making a false statement, that the arbitrator found that she had made a false statement, or that the New York Supreme Court and Appellate Division found the arbitrator's decision amply supported; DOP is permitted to inquire into these areas to attack her credibility. Indeed, Redd's argument would essentially eviscerate Rule 608(b)'s exception for inquiries on cross-examination that bear on a witness's character for truthfulness; after all, it will almost always be the case that a witness will be able to simply deny the impropriety of the conduct bearing on her credibility.

Fifth, Redd argues that her "statements are open to the innocent interpretation that [she] simply was *mistaken* as to the events that occurred." (Pl. Limine Opp'n at 4.) That may be so, but it does not change the fact that her allegedly false statements are *probative* of her character for truthfulness, which the jury alone determines. *See generally* Fed.R.Evid. 401(a) (evidence is probative if "it has any tendency to make a fact more or less probable than it would be without the evidence"). Indeed, the fact that Redd's actions are open to different interpretations is precisely why it is important for the jury to hear about the decision of the arbitrator; he, after all, evidently did not believe that Redd's stalking allegations were an innocent mistake, but rather that they were serious enough to warrant her termination.

Finally, Redd argues that DOP should be precluded from cross-examining Redd on the arbitrator's decision and Redd's

subsequent appeals from that decision because they "are far removed temporally and substantively from Redd's alleged false statements." (Pl. Limine Opp'n at 7; *see also* Pl. Limine Mem. at 18.) Redd again misses the point. These recent decisions are valuable because they are probative of her *present* character for truthfulness—that is, of whether she is likely to tell the truth to the jury when testifying. It is of no moment that the decisions are far removed from the alleged false statements themselves.

In sum, although DOP may not introduce extrinsic evidence regarding Redd's alleged false statements, it may inquire on cross-examination into Redd's allegedly false police report and UIR, the arbitrator's 2010 decision, and Redd's state challenges to that decision, as these inquiries are highly probative of Redd's character for truthfulness. *See* Fed.R.Evid. 608(b); Fed.R.Evid. 403. If DOP chooses to conduct such a cross-examination, Redd's counsel may of course attempt to rehabilitate her character for truthfulness on redirect (*see* Pl. Limine Opp'n at 8–9), although again without the use of any extrinsic evidence. *See* Fed.R.Evid. 608(b).

## D. Redd's Dismissed Claims

■ Both parties argue that no evidence should be introduced relating to claims that have been dismissed in this case. (*See* Def. Limine Mem. at 5–7; Pl. Limine Mem. at 7.) Their views, however, are not as closely aligned as they would appear at first.

With respect to those claims that were dismissed pursuant to DOP's *2009* summary judgment motion, see *Redd v. N.Y. State Div. of Parole,* No. 07–CV–120 (NGG)(LB), 2010 WL 1177453 (E.D.N.Y. Mar. 24, 2010), *vacated in part by* 678 F.3d 166 (2d Cir.2012),[8] the parties' agreement is unqualified. Redd argues that DOP should be precluded from referring to these claims, and DOP has represented that it does not intend to raise them. (Def. Limine Opp'n at 4.) The court agrees that these claims are not probative of Redd's sexual harassment allegations.

When it comes to the retaliation and state law claims that the court dismissed in 2012 (*see* December Opinion), however, the parties' views diverge. DOP claims that it does not intend to raise these claims (Def. Limine Opp'n at 4), and requests that the court preclude Redd from offering any evidence related to them (Def. Limine Mem. at 5–6). Redd also asks that DOP "be precluded from referring to plaintiff's discrimination claims that were dismissed pursuant to defendant's … summary judgment motions." (Pl. Limine Mem. at 7; *see also* Pl. Limine Opp'n at 12.) At the same time, however, Redd argues that *if* DOP is permitted to introduce evidence or cross-examine her on events that occurred subsequent to her sexual harassment allegations—such as her arrest, the arbitrator's decision, and her state court challenges to that decision—then she should be able to introduce evidence related to her dismissed claims to "contradict[ ] and contextualiz[e]" DOP's evidence. (Pl. Limine Opp'n at 9.) This includes cross-examination of Burgos, Spence, Liehmann, Jean–Pierre Adrien, Irwin Davies, Hunter Walker, and James Williams. (*See* Joint Pretrial Order (Dkt. 94) at 4–5.)

In Part II.C above, the court concluded that DOP is permitted to cross-examine Redd regarding her allegedly false statements in 2010 in order to attack Redd's character for truthfulness. If DOP conducts such a cross-examination, Redd may, as she requests, examine Spence and Lieh-

---

8. The court dismissed Redd's sexual harassment, retaliation, and disparate treatment claims, *see Redd,* 2010 WL 1177453, at *4, but the Second Circuit later reinstated Redd's sexual harassment claim, *see Redd,* 678 F.3d at 182.

mann "concerning [Redd's] reputation and/or character." (*Id.* at 5.) *See* Fed. R.Evid. 608(a) ("A witness's credibility may be ... supported by testimony about the witness's reputation for having a character for truthfulness ..., or by testimony in the form of an opinion about that character[,] ... only after the witness's character for truthfulness has been attacked.").

Apart from this inquiry, however, none of Redd's proposed questioning is proper. Redd seeks to cross-examine Burgos, Adrien, Davies, and Walker in an attempt to call into question DOP's reasons for disciplining Redd. (*See, e.g.,* Pl. Limine Opp'n at 10 ("Plaintiff should [ ] be permitted to introduce evidence concerning [Burgos's] testimony that he approved the decision to fire Redd because 'more than on two occasions' Redd ha[d] allegedly falsely accused someone and that those occasions included, 'Sarah Washington.' "); *id.* at 11 (arguing that if DOP attempts to introduce a 2008 Counseling Memorandum issued to Redd, she "should be permitted to introduce Adrien's testimony that the trigger for the 2008 Counseling Memorandum was not a 'major issue' 'at all'; that Counseling Memoranda are not considered a form of discipline; and evidence that seven DOP employees, including Davies, Burdi, [ ] and Walthall were involved in counseling Redd concerning the issue" (citations omitted)).) The court has held that Redd's disciplinary history is for the most part inadmissible (*see* Part II.B), and Redd similarly will not be permitted to introduce evidence calling DOP's disciplinary actions into question; this would in essence allow Redd to challenge inadmissible evidence.[9] And to the extent that Redd seeks to conduct these examinations in order to rebut DOP's at-

tacks during cross-examination on her own character for truthfulness, such testimony would constitute extrinsic evidence of specific conduct that is inadmissible under Rule 608(b). *Cf.* Fed.R.Evid. 608(b)(2) (court may permit cross-examination of a witness regarding specific conduct probative of *another* witness's character for truthfulness *only if* "the witness being cross-examined has testified" about the other witness's character); Fed.R.Evid. 608(a) (allowing testimony "about a witness's reputation for having a character for truthfulness" or "an opinion about that character ... after the witness's character for truthfulness has been attacked"). The same is true of Redd's proposed testimony of James Williams, a private investigator who was hired by Redd to gather evidence pertaining to her 2010 arrest in an effort to dispute that the police report she filed was false. (*See* Joint Pretrial Order at 6; Def. Limine Mem. at 7.) This too constitutes inadmissible extrinsic evidence of specific conduct under Rule 608(b).

In sum, the parties are precluded from introducing evidence related to claims that have been dismissed in this case, with the exception that if DOP cross-examines Redd regarding her allegedly false statements in 2010, Redd may examine Spence and Liehmann concerning her character for truthfulness. *See* Fed.R.Evid. 608(a).

### E. Pauline Hill and Clifford Crawford

 Redd has identified two witnesses who will purportedly give testimony concerning her sexual harassment claim: Pauline Hill and Clifford Crawford. (*See* Joint Pretrial Order at 6.) DOP argues that

---

9. As discussed above in Part II.B, DOP is permitted to introduce evidence regarding the insubordination incident with Washington in 2005. If Redd believes that any of the people mentioned above would have personal knowledge regarding whether or not the insubordi-

nation incident motivated Redd's decision to file the SDHR charge (which does not appear to be the case), she may later request a limited inquiry in that regard, and the court will take it under consideration.

Redd should not be permitted to call these witnesses to give testimony on her sexual harassment claim because she did not previously disclose that they would be giving testimony on that particular subject matter. (Def. Limine Mem. at 8–10.) The court disagrees.

 Federal Rule of Civil Procedure 26(a) requires a party to disclose to the other party, among other things, the individuals that the disclosing party plans to call as witnesses. Rule 26(e) imposes an ongoing obligation on parties to supplement their Rule 26(a) disclosures. And Rule 37(c)(1) provides that, "[i]f a party fails to ... identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." "A violation of Rule [26] is harmless when there is no prejudice to the party entitled to the disclosure." *Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*, No. 03–CV–969 (CSH), 2006 WL 2381817, at *2 (S.D.N.Y. Aug. 16, 2006).

According to DOP, Redd submitted two Rule 26 disclosure statements in this case, one on September 11, 2012, and one on October 5, 2012. (Def. Limine Mem. at 8.) Neither of these disclosure statements specifically identifies Pauline Hill or Clifford Crawford as witnesses. (*Id.*) The second disclosure statement incorporates two prior documents submitted by Redd when she was proceeding pro se: (1) her July 7, 2007, responses to Discovery Obligations issued by Magistrate Judge Lois Bloom (Pl. Obligations Ltr. (Dkt. 96–1)); and (2) her November 10, 2007, response to DOP's first set of interrogatories (Pl. Interrogatories Resp. (Dkt. 96–2)). In the former, Redd identified Pauline Hill as a woman

who made discriminatory remarks about her.[10] (Pl. Obligations Ltr. at 4–5.) In the latter, Redd referred to Clifford Crawford as a "witness with knowledge or information relevant to the subject matter of this action." (Pl. Interrogatories Resp. at 2.) Neither of these documents specifically identifies Hill or Crawford as a witness to the sexual harassment claim involving Sarah Washington. Redd claims that although neither Hill nor Crawford was a witness to Washington's alleged harassing conduct, "Redd told Hill and Crawford that Washington was sexual harassing her in or around the time that the harassment occurred," and "therefore intends to use the testimony of either Hill or Crawford for the purpose of opposing any claim made by defendant that she fabricated her claims of sexual harassment after the fact." (Pl. Limine Opp'n at 13.)

As an initial matter, the court doubts that Redd even failed to comply with Rule 26(a), particularly given the leeway that pro se litigants are typically given with respect to discovery rules. *See, e.g., Francis v. Carroll*, No. 07–CV–015 (JJF), 2008 WL 4704591, at *2 (D.Del. Oct. 21, 2008); *Huertas v. City of Philadelphia*, No. 02–CV–7955, 2005 WL 226149, at *2 (E.D.Pa. Jan. 26, 2005). DOP points to no part of either Rule 26 or Rule 37 that would require Redd to identify the particular claim about which each intended witness will testify.

But even assuming that Redd failed to provide complete Rule 26 disclosures, this failure was "harmless" because it did not prejudice DOP. Fed.R.Civ.P. 37(c)(1). Through her pro se disclosures in 2007, Redd placed DOP on notice that Hill and Crawford had relevant knowledge concerning Redd's case,[11] and DOP had ample

---

**10.** Redd's letter actually refers to "Pearline Hill" rather than Pauline Hill (Pl. Obligations Ltr. at 4–5), but DOP should reasonably have

known to whom Redd was referring despite this typographical error.

**11.** Redd also testified during her 2008 deposi-

opportunity to take these witnesses' depositions; it failed to do so. *See Rojo v. Deutsche Bank*, No. 06–CV–13574 (HB), 2009 WL 3790191, at *5 (S.D.N.Y. Oct. 30, 2009) (failure to disclose witnesses in Rule 26(a) disclosures was harmless because "all of the challenged witnesses were referred to in documents produced in discovery," and thus defendant "clearly was aware of them and chose not to depose any of them"). Indeed, DOP did not depose *any* of the individuals Redd included in her disclosures, making it unlikely that it would have deposed Hill and Crawford if Redd had specifically identified them as prospective witnesses on her sexual harassment claim.

Thus, the court will permit Redd to call Pauline Hill and Clifford Crawford to give testimony on her sexual harassment claim.

### F. Redd's Deposition Designations

Redd offers a number of deposition designations for five witnesses: Adrien, Burgos, Davies, Walker, and Washington. (*See* Joint Pretrial Order at 8–14.) DOP asks the court to deny each of these designations. (Def. Limine Mem. at 10–11.)

The court has already concluded that Redd is not permitted to offer the testimony of Adrien, Walker, and Davies because such testimony would not be probative of her sexual harassment claim. (*See* Part II.D.) This ruling applies to depositions as well as live testimony. Similarly, Burgos's deposition in 2012 (in contrast with his deposition in 2008) was related not to Redd's sexual harassment claim but to her retaliation claim; Redd is thus precluded from offering this deposition as part of her affirmative case.

The depositions of Burgos and Washington in 2008, however, are potentially relevant to Redd's sexual harassment complaints. Nevertheless, DOP argues that the admission of their deposition testimony should be precluded because: (1) they are available to testify in person; and (2) their testimony does not constitute the admissions of a party opponent.[12] (Def. Limine Mem. at 10–11.) The court disagrees.

Federal Rule of Civil Procedure 32(a)(3) states that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, [or] managing agent." Rule 32(a)(3) is "liberally construed," and although "the court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, it may not refuse to allow the deposition to be used merely because the party is available to testify in person." *N. Ins. Co. of N.Y. v. Albin Mfg., Inc.*, No. 06–CV–190 (S), 2008 WL 3285852, at *3 n. 4 (D.R.I. Aug. 8, 2008).

DOP does not contend that Burgos and Washington were not managing agents of DOP at the time of their depositions, but argues instead that determining whether they were managing agents "would be a time-consuming task at trial." (Def. Limine Opp'n at 11.) This argument is unsound, as the determination of whether Burgos and Washington are "managing agents" is a legal question for the court, not a factual question for the jury. *See Mega Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1403 (11th Cir.2009) ("Interpretation of the Federal Rules of Civil

---

tion that she talked to Crawford about Washington's harassment. (*See* July 14, 2008, Redd Dep. Tr. (Dkt. 105–4) at 145:14–15.)

**12.** It is undisputed that Redd may offer their deposition testimony for *impeachment* purposes. *See* Fed.R.Civ.P. 32(a)(2). DOP contends only that she may not offer this testimony as affirmative proof in her case-in-chief.

Procedure presents a question of law . . . .").

In any event, the court concludes that Burgos and Washington meet the definition of "managing agent." "The test for a managing agent is not formulaic" but "is answered pragmatically on a fact-specific basis." *Schindler Elevator Corp. v. Otis Elevator Co.*, No. 06–CV–5377 (CM)(THK), 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007). Courts in this Circuit have considered five factors in determining whether an employee is a "managing agent" of a party:

> (1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation; and (5) whether the individual can be expected to identify with the interests of the corporation.

*Id.* (applying this test in the context of Rule 30(b)(1)); *see also Eugenia VI Venture Holdings, Ltd. v. Chabra*, No. 05–CV–5277 (DAB)(DFE), 2006 WL 1293118, at *1 (S.D.N.Y. May 10, 2006) (noting this test in the context of Rule 32(a)).

Burgos and Washington meet this test. Both were invested with "general powers allowing [them] to exercise judgment and discretion in corporate matters"—Burgos as DOP's Director of Human Resources (with responsibility for overseeing a number of offices in charge of managing DOP personnel), and Washington as the Queens I Area Office Bureau Chief (with responsi-

bility for supervising parole officers and senior parole officers in her bureau). As both of them already have given deposition testimony, the second factor of whether they "can be relied upon to give testimony" is easily met. They also each had general powers allowing them to exercise judgment and discretion concerning matters at issue in this litigation—Washington as Redd's supervisor, and Burgos as a person with significant influence over disciplinary actions taken against Redd (as Redd has consistently argued). And both could "be expected to identify with the interests of the corporation": whether Washington sexually harassed Redd is the central question governing DOP's liability, and one that Washington herself would have a personal stake in contesting; and Burgos was a co-defendant in this case until the court granted summary judgment on the claims against him.

Accordingly, Redd may offer the 2008 deposition testimony of Washington and Burgos as affirmative proof, but not the deposition testimony of Adrien, Davies, or Walker, or the 2012 deposition testimony of Burgos.

### G. Sarah Washington's Sexual Orientation

Redd argues that Washington should not be permitted to testify about her sexual orientation or marital status. (Pl. Limine Mem. at 21.) She is mistaken.

As Redd points out (*see id.*), "a plaintiff's ability to make out a claim for gender-based hostile work environment is not necessarily dependent on the gender of the individuals involved." *Anderson v. England*, 359 F.Supp.2d 213, 217 (D.Conn. 2005) (alteration omitted). It is for that reason that "sex discrimination consisting of same-sex sexual harassment is actionable under Title VII." *Oncale v. Sun-*

*downer Offshore Servs., Inc.,* 523 U.S. 75, 76, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

 It is also well-established, however, that a Title VII plaintiff alleging sexual harassment "must establish that the hostile or abusive treatment was because of his or her sex," which "require[s] an assessment of individuals' motivations and state of mind." *Redd,* 678 F.3d at 175, 178 (emphasis omitted). The Supreme Court has specifically held that "credible evidence that the harasser was homosexual" is relevant to this inquiry. *Oncale,* 523 U.S. at 80, 118 S.Ct. 998. This fact (or its absence) would not be *dispositive* to the question of whether the conduct at issue was "because of" the plaintiff's sex, but it is one of the *factors* for the jury to consider. *See Redd,* 678 F.3d at 173 ("The *Oncale* court described three possible ways[ ] in which a plaintiff may prove that same-sex harassment occurred 'because of sex.' A plaintiff can (1) provide 'credible evidence that the harasser was homosexual'; (2) demonstrate that the harasser was 'motivated by general hostility to the presence of women in the workplace'; or (3) 'offer direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace.'" (alteration in original) (quoting *Oncale,* 523 U.S. at 80, 118 S.Ct. 998)); *English v. Pohanka of Chantilly, Inc.,* 190 F.Supp.2d 833, 846 (E.D.Va.2002) (plaintiff's "failure to provide any 'credible evidence' that [the alleged harasser was] a homosexual" was one of the grounds for rejecting his claim (quoting *Oncale,* 523 U.S. at 80, 118 S.Ct. 998)).

Thus, DOP will be permitted to offer evidence of Washington's sexual orientation and marital status.

## H. Redd's Pro Se Status and Acquisition of Counsel

 Redd argues that DOP should be precluded from offering evidence related to Redd's status as a pro se litigant in this matter or her subsequent acquisition of counsel. (Pl. Limine Mem. at 23–24.) DOP "seeks to cross examine plaintiff on her sworn filings in this matter in which she requests *in forma pauperis* status and requests *pro bono* counsel." (Def. Limine Opp'n at 5.) DOP claims that, "[i]n both of these documents, plaintiff swore that her income in 2007 was either $3200 or $3300 per month, which is around $39,000" per year, when in fact "her actual income that year [was] approximately $68,000." (*Id.* at 6.)

The court's analysis of this issue is similar to its analysis of Redd's allegedly false stalking allegations in 2010. (*See* Part II. C.) Although DOP may not offer extrinsic evidence regarding Redd's application for in forma pauperis status or for pro bono counsel, it may inquire into these matters on cross-examination of Redd because, if DOP's allegations are true, they would be highly probative of her character for truthfulness. *See* Fed.R.Evid. 608(b). If indeed Redd lied in formal filings to the court for the purposes of financial gain, the jury, having been properly instructed, should certainly have the opportunity to hear this fact as it gauges Redd's credibility.

## I. Redd's Other Requests

Two of Redd's requests are now moot: (1) exclusion of a document unrelated to this case (Pl. Limine Mem. at 2); and (2) exclusion of evidence or argument suggesting that jurors, as taxpayers, would be responsible for any monetary award to Redd (*id.* at 23). DOP has recently removed the purportedly irrelevant document from its list of trial exhibits (*see* Jan. 22, 2013, Def. Ltr. (Dkt. 111)), and it has agreed not to suggest to the jury that any verdict will come from state taxpayers (Def. Limine Opp'n at 7).

Finally, Redd asserts without explanation that a number of documents should be excluded on hearsay grounds. (Pl. Limine Mem. at 24–25.) The court will not entertain Redd's generalized request, and denies this portion of her motion in limine without prejudice; Redd may at trial contest the admissibility of these documents should DOP attempt to admit them.

## III. CONCLUSION

Redd's motion for reconsideration is DENIED. The parties' motions in limine are each GRANTED IN PART and DENIED IN PART; in particular, the court: (1) excludes any evidence concerning Redd's complaints, grievances, and lawsuits, other than (a) her sexual harassment complaints and grievances against Sarah Washington, (b) evidence pertinent to the insubordination incident with Washington in 2005, and (c) DOP's cross-examination of Redd regarding her allegedly false statements in 2010; (2) excludes evidence of Redd's disciplinary history and her positive performance history, with the exception that the 2005 insubordination incident may be admitted only as evidence of Redd's motive for filing the SDHR charge; (3) permits DOP to cross-examine Redd on her allegedly false police report and UIR, the arbitrator's 2010 decision, and Redd's state court challenges to that decision; (4) excludes any evidence related to claims that have been dismissed in this case, with the exception that if DOP cross-examines Redd regarding her allegedly false statements in 2010, Redd may examine Spence and Liehmann concerning her character for truthfulness; (5) permits Redd to call Hill and Crawford to give testimony on Redd's sexual harassment claim; (6) permits Redd to offer the 2008 deposition testimony of Washington and Burgos, but not the deposition testimony of Adrien, Davies, or Walker, or the 2012 deposition testimony of Burgos; (7) permits DOP to offer evidence of Washington's sexual orientation and marital status; (8) permits DOP to cross-examine Redd regarding her application for in forma pauperis status and for pro bono counsel; (9) rejects Redd's other requests without prejudice as either moot or lacking in sufficient explanation. Before trial begins, the parties shall make any modifications to their proposed jury instructions necessary to align them with the rulings in this opinion.

SO ORDERED.